UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BRADLEY SHEAD | CIVIL ACTION |
| VERSUS | No. 24-2655 |
| C-DIVE, LLC | SECTION: "J"(2) |

## ORDER & REASONS

Before the Court are a *Motion to Remand* **(Rec. Doc. 10)** filed by Plaintiff Bradley Shead and Defendant C-Dive, LLC ("C-Dive")'s opposition (Rec. Doc. 13). No reply was filed. Having considered the motion, the legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED.**

## FACTS AND PROCEDURAL BACKGROUND

This case arises from Plaintiff Bradley Shead's slip and fall onboard the M/V Lady Monroe (the "vessel"), a dive support vessel, during a pipeline deconstruction project in the Gulf of Mexico. Defendant C-Dive was the bareboat charterer of the vessel. Plaintiff was working onboard as an independent contractor for Marine Ventures International, Inc. ("MVI"). Plaintiff had no contractual relationship with Defendant C-Dive and his role aboard the vessel was to work as both a protected species observer ("PSO") and a passive acoustic monitoring "PAM" operator ("PSO/PAM"). The objective of Plaintiff's position was to mitigate sound impact on protected marine species while the vessel and her crew engaged in the pipeline deconstruction project.

Located in federal waters, the pipeline deconstruction project was federally regulated, requiring Plaintiff to be aboard during the project as a PSO to observe for certain species listed in the Endangered Species Act and Marine Mammal Protection Act. As the PSO, Plaintiff held the environmental permit necessary for C-Dive to carry out the project in compliance with federal protocols. If Plaintiff detected a protected species in or near the project zone, Plaintiff called for a shutdown of operations until the marine species exited the area.

While onboard, Plaintiff fell while descending a set of stairs, injuring himself.

In October 2024, Plaintiff filed suit against C-Dive in Louisiana state court. He brought claims under the Jones Act and general maritime law against C-Dive as a "joint employer" and as the alleged vessel owner and operator. Pursuant to 28 U.S.C. § 1446(b), C-Dive removed the case to this Court on the basis of diversity jurisdiction, arguing Plaintiff fraudulently pleaded his Jones Act claims because Plaintiff is not a Jones Act seaman. (Rec. Doc. 1, at 5).

In this instant motion, Plaintiff moves to remand, arguing C-Dive is barred from removing a Jones Act case, because Plaintiff meets the seaman status test. The parties disagree over both prongs of the *Chandris* seamen test. First, whether Plaintiff was a member of vessel's crew; and therefore, contributed to the function or mission of the vessel. Second, whether Plaintiff's connection to the vessel was substantial in duration and nature.

## **LEGAL STANDARD**

The Jones Act grants "seamen" a cause of action in negligence against his employer for injuries incurred in the course of his employment. 46 U.S.C. § 30104 (incorporating 45 U.S.C. § 51). However, only a seaman can bring Jones Act claims. Generally, such claims filed in state court are "not subject to removal to federal court." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455 (2001); *Santee v. Oceaneering Int'l, Inc.*, 110 F.4th 800, 805 (5th Cir. 2024). The Fifth Circuit has stated that "it is axiomatic that Jones Act suits may not be removed from state court because 46 U.S.C. § 668 incorporates the general provisions of the Federal Employer's Liability Act, including 28 U.S.C. § 1445(a), which in turns bars removal." *Santee v. Oceaneering Int'l, Inc.*, 110 F.4th 800, 805 (5th Cir. 1993) (citing *Lackey v. Atl. Richfield Co.,* 990 F.2d 202, 207) (cleaned up). However, "a Jones Act claim that is 'fraudulently pleaded' or pleaded where there is no possibility that the plaintiff can prove seaman status" will not prevent removal. *Santee v. Oceaneering Int'l, Inc.*, 110 F.4th 800, 805 (5th Cir. 1993).

The Supreme Court has established a two-pronged test to determine whether a party is a seaman under the Jones Act. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995). "To be a seaman: (1) the plaintiff's duties must contribute to the function or mission of the vessel, and (2) the plaintiff must have a connection to the vessel or fleet of vessels that is substantial in duration and in nature." *Santee v. Oceaneering Int'l, Inc.*, 110 F.4th 800, 805 (5th Cir. 1993) (citations omitted). The Fifth Circuit enumerated four additional inquiries relevant to the second prong of the seaman test:

3

(1) whether the plaintiff is subject to "the perils of the sea," (2) whether the plaintiff owes "his allegiance to the vessel, rather than simply to a shoreside employer," (3) whether the plaintiff's work is sea-based or involves seagoing activity, and (4) whether the plaintiff's "assignment to [the] vessel is limited to a discrete task after which [his] connection to the vessel ends." *Sanchez v. Smart Fabricators of Texas, L.L.C.*, 997 F.3d 564, 574 (5th Cir. 2021).

## DISCUSSION

The Court finds that Plaintiff was not a member of the vessel's crew. After analysis of the *Sanchez* inquiries, the Court also finds that Plaintiff's connection to the vessel was not substantial in duration and in nature. Thus, Plaintiff is not a Jones Act seaman.

First, Plaintiffs is not a member of the crew because protected species or marine mammal observers do not qualify as seamen under the Jones Act. The Eleventh Circuit, in *O'Boyle v. United States*, considered whether a scientific observer aboard a Japanese fishing vessel was a seaman when the scientific observer was solely onboard because a treaty required him to be in order to observe marine life during the ships voyage. *O'Boyle v. United States*, 993 F.2d 211 (11th Cir. 1993). The scientific observer contended that the vessel could not accomplish its mission of fishing without him. *Id.* at 213. Disagreeing, the Eleventh Circuit found that the scientific observer was "not a member of the crew, was not involved with the navigation of the vessel, was not paid by the vessel, had no responsibilities or

4

allegiance owing to the owner or operator of the vessel, was not performing the ship's work nor furthering its purpose." *Id.* at 213.

In *Belcher v. Sundad, Inc.*, the court considered whether a fisheries observer who was gathering information about target and prohibited species aboard a fishing vessel was a Jones Act seaman. *Belcher v. Sundad, Inc.*, No. 07-346-HO, 2008 WL 2937258 (D. Ore. July 18, 2008). The plaintiff argued she was a Jones Act seaman, because the observer program was legally required for the vessel to operate. *Id.* at *2. Disagreeing, the court found that the plaintiff was not a seaman because she neither contributed to the function of the vessel nor did she have a substantial connection to the vessel in nature or duration. *Id.*

In *Sanders v. Cambrian Consultants (CC) Am., Inc.*, the Southern District Court of Texas held an observer who was working aboard a vessel employed solely as a statutorily required MMO was "scientific personnel" and not a Jones Act seaman. *Sanders v. Cambrian Consultants (CC) Am., Inc.*, 132 F. Supp. 3d 853, 857 (S.D. Tex. 2015).

While Plaintiff asserts that seaman status is best determined by a jury and that the Court should resolve all disputed facts in favor of the Plaintiff, C-Dive has provided evidence that Plaintiff was employed solely as a PSO/PAM. Citing to Plaintiff's deposition testimony, C-Dive demonstrates that Plaintiff was working as an independent contractor for MVI. Plaintiff was contracted out to various companies who do work on the water as well as subsea. Plaintiff's job required him to rotate though different assignments for different companies when he was available and had

5

the option to reject any given job as his discretion or schedule. His assignments were usually for a duration of 4–6 weeks, mostly aboard vessels and sometimes on oil rigs. Once a project was completed, Plaintiff returned to his home in Houston for another 4–6 weeks before scheduling another assignment.

Moreover, Plaintiff did not assist in the operation of the vessel. Neither did Plaintiff assist in the actual deconstruction of the pipeline, which the Court finds was the mission of the vessel. Instead, his role was to observe for protected marine specifies on behalf of the federal government.

Furthermore, the Court finds that Plaintiff owes his allegiance to a shoreside employer, MVI, rather than to the vessel. Plaintiff's assignment to the vessel was limited to the discrete task of fulfilling his role as a PSO/MMO after which his connection to the vessel ends. Further, Plaintiff does not have a connection to the vessel or fleet of vessels under common ownership that is substantial in duration and nature.

Lastly, the Court finds Plaintiff's position onboard the vessel is like the "specialized transient workers" in *Sanchez*.

In *Sanchez*, the Fifth Circuit drew a distinction between crew and specialized transient workers onboard in the context of drill ships:

> Our case law reveals generally that two types of workers are found on drilling rigs. First, we have the drilling crew, who conduct the drilling operations (and workers who support that activity) and stay with the vessel when it moves from one drilling location to another. These workers are the members of the crew of the vessel and are seaman.
>
> The second group are specialized transient workers, usually employed by contractors. These workers are engaged to do specific discrete short-

6

> term jobs. Discrete transient jobs are like the work done by longshoreman when a vessel calls in port. As stated in *Papai*, these workers have only a 'transitory or sporadic' connection to a vessel or group of vessels and do not qualify for seaman status.

*Sanchez*, 997 F.3d at 576. Here, Plaintiff was a specialized transient worker employed by MVI to perform a specific short-term job onboard. Once the pipeline deconstruction was complete, Plaintiff's connection the vessel ended, and Plaintiff returned home to await another assignment from MVI.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the motion is **DENIED.**

New Orleans, Louisiana, this 10th day of January 2025.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

7